The Kantrow Law Group, PLLC
*Attorneys for Allan B. Mendelsohn*, Trustee
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
Fred S. Kantrow, Esq.
Hailey L. Kantrow, Esq.
516 703 3672

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | RETURN DATE: **11/19/24** |
| EASTERN DISTRICT OF NEW YORK | TIME: **10:00 a.m.** |

-------------------------------------------------------------x

In re:

        BENJAMIN O. RINGEL,

Case No. 24-71468-las
Chapter 7

        Debtor.

-------------------------------------------------------------x

**TRUSTEE'S AMENDED APPLICATION FOR THE ENTRY OF AN ORDER
AUTHORIZING THE TRUSTEE TO ENTER INTO
PROPOSED SETTLEMENT PURSUANT TO RULE 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO:    HON. LOUIS A. SCARCELLA
        UNITED STATES BANKRUPTCY JUDGE

Allan B. Mendelsohn, the trustee herein (the "Trustee"), by and through his counsel, The Kantrow Law Group, PLLC, respectfully submits this as and for his application (the "Application") seeking the entry of an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the proposed stipulation (the "Settlement Agreement") entered into by and between (i) the Trustee of the estate of Benjamin O. Ringel, ("Debtor"), and (ii) JDWC, LLC, ("JDWC"), Atalaya Asset Income Fund II, LP ("Atalaya"), and LMezz 250 W90 LLC ("LMezz") (JDWC, Atalaya, and LMezz are collectively the "Parties") (Trustee and the Parties are collectively the "Settling Parties"), and authorizing Trustee to enter into same, and states as follows:

**I. PRELIMINARY STATEMENT**

1.  This application is submitted by the Trustee for the purpose of approving the settlement pursuant to the Settlement Agreement annexed hereto as **Exhibit "1"** and authorizing the Trustee to enter into the settlement.

## II. JURISDICTION AND VENUE

2.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1408 *et seq*.

4.  The statutory predicate for the relief requested herein are Bankruptcy Rules 9019(a) and Section 105 of Title 11 of the United States Code (the "Bankruptcy Code").

## III. PROCEDURAL HISTORY

5.  On April 4, 2024, (the "Petition Date"), Benjamin O. Ringel, the debtor (the "Debtor") filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code.

6.  Allan B. Mendelsohn was appointed interim Trustee and thereafter duly qualified as permanent case Trustee.

7.  Prior to the Petition Date the Debtor was the sole member of BR Lakewood ("BR Lakewood"). In turn, BR Lakewood held a 50% interest in BCR Lakewood Holdings, LLC ("BCR Lakewood"). BCR Lakewood was the sole member of BCR Pinewood Realty, LLC ("BCR Pinewood"). BR Lakewood also holds a 100% interest in BCR 12th Carey Realty, LLC ("BCR Carey") and a 100% interest in BCR Gertners Realty, LLC ("BCR Gertners").

8.  With regard to BCR Pinewood, it was the fee owner of the real property known as Block 104, Lot 4, in Lakewood, New Jersey (the "Pinewood Property"). The Pinewood Property was liquidated pursuant to an order of the Superior Court of New Jersey, Ocean County (the "New Jersey Court").

9. Currently, BCR Carey is the fee owner of the real property known as Block 62, Lots 8 and 9, in Lakewood, New Jersey.

10. Currently, BCR Gertners is the fee owner of the real property known as Block 52, Lot 3, in Lakewood, New Jresey.

11. JDWC holds a judgment against the Debtor dated January 8, 2016, in the face amount of $9,484,241.02 which continues to accrue inerest (the "JDWC Judgment"). The JDWC Judgment was affirmed on appear by the Superior Court of New Jersey, Appellate Division, in its decision dated August 30, 2023.

12. Pursuant to the decision of the Appellate Decision, JDWC made application to the New Jersey Court seeking to update its judgment calculations. The application was granted by an Order of the New Jersey Court dated January 25, 2024. On March 11, 2024, the Debtor filed a motion seeking reconsideration of the January 25, 2024 Order ("Debtor's Reconsideration Motion").

13. On April 10, 2024, JDWC filed a motion in the New Jersey Court seeking an award of attorney's fees and costs as part of its updated amount due pursuant to JDWC Judgment. JDWC's motion for attorney's fees and costs is currently *sub judice* (the "JDWC Fee Application").

14. On October 25, 2019, the New Jersey Court entered a charging order against the Debtor's interests in certain limited liability companies, including BR Lakewood, BCR Pinewood, BCR Gertners and BCR Carey (the "JDWC Charging Order").

15. Atalaya, also a holder of a judgment against the Debtor, obtained a charging order against the Debtor (the "Atalaya Charging Order"). The Atalaya Charging Order, dated March 8, 2023, granted by the Supreme Court of the State of New York (the "New York Court") included

the Debtor's interests in BR Lakewood, BCR Pinewood, BCR Gertners and BCR Carey. The Atalaya Charging Order was recognized by the New Jersey Court.

16. LMezz is also a holder of a judgment against the Debtor. LMezz also obtained a charging order (the "LMezz Charging Order") against the Debtor and the New Jersey Court entered the LMezz Charging Order against BR Lakewood, BCR Pinewood, BCR Gertners and BCR Carey.

17. The JDWC Charging Order, the Atalya Charging Order and the LMezz Charging Order (collectively, the "Charging Orders") perfected the security positions of each of these Settling Parties, in the Debtor's various interests.

18. Prior to the Petition Date, Atalaya filed a motion seeking turn over of the Debtor's interests in BR Lakewood and further to be appointed the receiver for BR Lakewood. On December 11, 2023, the New York Court entered an Order directing the turnover of 100% of the Debtor's membership interests in BR Lakewood to Atalaya (the "Turnover Order"). On January 9, 2024, pre-petition, the Debtor filed a Notice of Appeal seeking to overturn or otherwise vacate the Turnover Order. This appeal is currently *sub judice*.

19. On March 28, 2024, pre-petition, consistent with the various orders obtained by Atalaya, the Pinewood Property was sold and BR Lakewood's 50% interest in the net proceeds generated by the sale (approximately $19.4 million) were placed in escrow pending the entry of a further order in the New Jersey Court directing the distribution of the net proceeds to the various creditors with an interest therein.

20. On June 4, 2024, Atalaya sought and obtained an Order of this Court, entered on July 16, 2024, confirming the absence of a stay with regard to the proceeds realized from the sale of the Pinewood Property. This Order allowed the New Jersey Court to approve the distribution of the proceeds to the creditors of BR Lakewood (the "Distribution Motion"). On July 19, 2024,

the New Jersey Court entered an Order approving the Distribution Motion and the funds were released from escrow satisfying various creditors' interest and claims against BR Lakewood as well as the Debtor.

21. JDWC has filed a proof of claim in the Debtor's chapter 7 case in which it sets forth a claim in the amount of $10,457,266.16 (the "JDWC Claim").

22. Atalaya has filed a proof of claim in the Debtor's chapter 7 case in which it sets forth a claim in the amount of $6,049,999.90 (the "Atalaya Claim").

23. LMezz has filed a proof of claim in the Debtor's chapter 7 case in which it sets forth a claim in the amount of $16,753,726.51 (the "LMezz Claim").

24. Pursuant to the Distribution Motion, the JDWC Claim, the Atalaya Claim and the LMezz Claim, were reduced. As of July 19, 2024, JDWC is owed the sum of $818,856.24 and as of March 31, 2024, JDWC avers that the sum of $680,685.00 in attorney's fees remains due and owing. As of July 19, 2024, Atalaya is owed the sum of $296,741.02 and it avers that the sum of $543,266.08 is attorney's fees remains due and owing. As of July 19, 2024, LMezz is owed the sum of $14,729,753.81. Interest, costs, and legal fees continue to accrue and remain subject to Court approval. None of the Settling Parties waive any of their respective rights in this regard and the Trustee preserves the estate's rights to object as may be appropriate in this regard. Accordingly, even after the distribution of the funds that were realized from the sale of the Pinewood Property, the Settling Parties have amounts that remain due and owing and are secured by the remaining assets of BR Lakewood, BCR Gertner and BCR Carey.

25. Now the Settling Parties are in the process of the proposed sale of the Gertners Property and the Carey Property so that they may reduce these assets to cash. The proceeds realized from the sale of these properties shall be distributed consistent with the terms set forth in

the proposed Settlement Agreement. To the extent that the automatic stay is implicated by the proposed sale of the properties, the Settling Parties agree that the stay should be modified to allow for the sale and distribution of the proceeds in accordance with this settlement.

## IV. TERMS OF STIPULATION OF SETTLEMENT

26. Pursuant to the terms of the Settlement Agreement, a copy of which is annexed hereto as **Exhibit "1"**, the Parties have agreed to the following:

27. Pursuant to section 362(d)(2) of the Bankruptcy Code, the automatic stay shall be deemed modified to allow for the proposed sale of the properties as set forth in the Settlement Agreement and as detailed herein.

28. Provided that the Court enters an Order approving the proposed Settlement Agreement, the Trustee shall, within fourteen (14) days of the entry of such an Order, cause the dismissal of the pending appeal of the Turnover Order, with *prejudice* and shall further cause the withdrawal of the pending Reconsideration Motion, also with *prejudice*.

29. The receiver put in place pursuant to the Turnover Order is authorized to perform the management of the Gertners Property as well as the Carey Property. The receiver is further authorized to list for sale the Gertners Property as well as the Carey Property. The receiver may retain legal counsel; a realtor; a property management company and perform all customary and appropriate things necessary to preserve the value of the Gertners Property as well as the Carey Property. The proposed sale process shall be carried out in the New Jersey Court. Moreover, the receiver is permitted to perform those actions authorized under the Turnover Order. The Settling Parties and the Trustee all have the right to fully participate in the New Jersey Court or the New York Court proceedings and reserve all of their respective rights to object to any action contrary to the terms of the Settlement Agreement.

30. After the payment of all ordinary and customary closing costs subject to approval in the New Jersey Court (including, but not limited to, realtor commissions, outstanding ordinary expenses, legal fees, title charges and applicable taxes or penalties due), the remaining distributions of BR Lakewood shall be used to satisfy the following claims in the following order: (a) first, payment of $250,000 to the Trustee (for the benefit of the bankruptcy estate); (b) second, fully satisfaction of JDWC's balance due on the JDWC Judgment, plus interest, and legal fees and other costs accrued subject to the JDWC Fee Application, <u>less</u> $50,000; (c) third, full satisfaction of Atalays balance due, plus interest, legal fees and other costs to be accrued subject to New York Court approval, <u>less</u> $25,000; (d) fourth, full satisfaction of LMezz balance due; and (e) fifth, remainder to be turned over to the Trustee for the benefit of the bankruptcy estate. The receiver shall waive any commission due and will only be entitled to seek legal fees and costs incurred, subject to the approval of the New Jersey Cout.

31. Upon receipt of payment in full of their respective claims, JDWC, Atalaya and LMezz agree to withdraw or modified as the case may be, their respective claims filed against the bankruptcy estate.

32. Subject to the entry of an Order approving the terms of the proposed Settlement Agreement, the Trustee releases JDWC, Atalaya and LMezz as well as their respective successor and assigns from any and all claims or causes of action that have been or could have been asserted against them by the Debtor, the Trustee or the bankruptcy estate.

## V. **LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS**

33. Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber*

*Products Co.,* 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

34. Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides: On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the Debtor, and indenture trustee as provided in Rule 2002, and to any other entity as the court may direct.

35. Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by case law, focusing upon whether the purported settlement is reasonable and in the best interests of creditors. In Anderson, 390 U.S. at 414, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expenses and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. *Anderson*, 390 U.S. at 414.

36. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

37. In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] . . . an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied Down Products,* 150 B.R. at 522-23. In *Carla Leather*, the Court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcomes in litigation, as well as the avoidance of wasteful litigation expense, lay behind the Congressional infusion of a power to compromise . . . This could hardly be achieved if the test in hearing for approval meant establishing success or failure to a certainty.

*Carla Leather,* 44 B.R. at 470; *see also Purofield Down Products,* 150 B.R. at 522-23.

38. In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein,* 464 F.2d

689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972). *See also In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991). In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444.

39. The settlement evaluation process is not designed to substitute the court's judgment for that of the trustee. *Carla Leather,* 44 B.R. at 465. While a court is not expected to "rubber stamp" the trustee's proposed settlement, *In re Ionosphere Clubs Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a trustee's informed judgment that a compromise is fair and equitable. *Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423; *Drexel Burnham Lambert,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As stated by the district court in *International Distribution Centers,* the court should give weight to the support of not only the trustee but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Thus, a court should consider both the proponents' opinions and independently evaluate the arguments both for and against the settlement to determine whether the settlement should be approved. *Purofied Down Products,* 150 B.R. at 523.

40. The court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Products*, 150 B.R. at 523; *In re Texaco, Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant*, 699 F.2d at 613 14; *Newman v. Stein*, 464 F.2d at 693; *Purofied Down Products*, 150 B.R. at 523-24. This concept of

a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion. *Newman v. Stein*, 464 F.2d at 693. Thus, a court should not insist upon the best possible settlement, but only that a settlement is within the range of reasonableness.

41. In deciding whether a settlement should be approved, courts in the Second Circuit have considered some or all of the following factors:

1. the relative benefits to be received by creditors under the proposed settlement;

2. the likelihood of success in the litigation compared to the present and future benefits conferred by the proposed settlement;

3. the prospect of complex and protracted litigation if settlement is not approved;

4. the attendant expenses, inconvenience and delay of litigation;

5. the probable difficulties of collecting on any judgment that might be obtained;

6. the competency and experience of counsel who support the proposed settlement;

7. the extent to which the settlement is the product of arm's length bargaining; and not the product of fraud or collusion;

8. the nature and breadth of any releases to be issued as a result of the proposed settlement; and

9. the paramount interest of the creditors and proper deference to their reasonable views.

*See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Ionosphere Clubs* 156 B.R. at 414; *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel Burnham Lambert,* 134 B.R. at 497; *Crowthers McCall,* 120 B.R. at 287; *Texaco,* 84 B.R. at 901; *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44 B.R. at 466. *See* 10 *Collier on Bankruptcy,* §9019.02 (15th Ed. Revised 1998).

42. In summary, the "very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Newman v. Stein,* 464 F.2d at 692.

43. Here, the proposed Settlement Agreement negotiated with the various creditors allows for the sale of the Gertners Property and the Carey Property and provides a mechanism for the bankruptcy estate to realize not less than $250,000 from the sale. JDWC, Atalaya and LMezz have substantial claims against the Debtor and therefore the bankruptcy estate. The Trustee avoids costly, protracted, and uncertain litigation in connection with the interest that the bankruptcy estate has in the various entities controlled by the Debtor. As this Court is aware, the Debtor has interfered with and continues to interfere with the orderly administration of the bankruptcy estate, not only in this Court but in the New Jersey Court and the New York Court, where he attempts to reargue, relitigate and frustrate the rights of creditors – and these creditors in particular. The Debtor has taken contrary positions as it suits him in an effort to argue that he does not hold the interests in the various entities despite the fact that courts of competent jurisdiction have already decided the issues. By entering into this proposed Settlement Agreement, the Trustee is able to put an end to the nonsense and allow these creditors and the bankruptcy estate to realize substantial distributions on the claims which have been litigated for years.

44. The Trustee has not waived any of the bankruptcy estate's rights to contest any award of legal fees to any of the Settling Parties if he believes that there is a reason to do so. Thus, that right is preserved for the benefit of the bankruptcy estate. Moreover, this proposed Settlement Agreement goes a long way in preventing the Debtor from continuously interfering with the process and impeding these creditors from finally being able to exercise their rights and receive the funds to which they are entitled. Accordingly, the Trustee believes that the proposed

consensual resolution is appropriate and exceeds the lowest level of reasonableness. Thus, the Trustee supports the proposed settlement under these facts and circumstances.

## VI. **CONCLUSION**

For all of the reasons set forth herein, the applicant respectfully requests that this Honorable Court enter an Order authorizing the Trustee to enter into and approving the proposed Settlement Agreement together with such other relief that this Court deems just and proper.

Dated: Smithtown, New York
October 21, 2024

                                                  The Kantrow Law Group, PLLC
                                                  *Attorneys for the Trustee*

BY:   *s/Fred S. Kantrow*
        Fred S. Kantrow
        732 Smithtown Bypass, Suite 101
        Smithtown, New York 11787
        (516) 703 3672
        fkantrow@thekantrowlawgroup.com