The Kantrow Law Group, PLLC
*Attorneys for Allan B. Mendelsohn, Trustee*
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
Fred S. Kantrow, Esq.
Hailey L. Kantrow, Esq.
516 703 3672

UNITED STATES BANKRUPTCY COURT                     RETURN DATE:  **11/19/24**
EASTERN DISTRICT OF NEW YORK                       TIME:  **10:00 a.m.**
-----------------------------------------------------------x
In re:

                                           Case No. 24-71468-las

        BENJAMIN O. RINGEL,                           Chapter 7

                    Debtor.
-----------------------------------------------------------x

### TRUSTEE'S APPLICATION SEEKING ENTRY OF AN ORDER
### HOLDING BENJAMIN O. RINGEL IN CONTEMPT
### AND IMPOSING SANCTIONS

TO:    HON. LOUIS A. SCARCELLA
        UNITED STATES BANKRUPTCY JUDGE

        Allan B. Mendelsohn, the trustee (the "Trustee") of the Estate of Benjamin O. Ringel, the

debtor (the "Debtor"), by and through his attorneys, The Kantrow Law Group, PLLC, respectfully

submits this as and for his application (the "Application") seeking the entry of an Order holding

the Debtor in contempt for his continuous interference with the orderly administration of this

chapter 7 bankruptcy case and imposing sanctions for said interference, and states as follows:

        1.      The Debtor filed a voluntary petition for relief from his creditors pursuant to chapter

7 of title 11 of the United States Code (the "Bankruptcy Code") on April 15, 2024 (the "Petition

Date").

        2.      Allan B. Mendelsohn was appointed interim Trustee and thereafter duly qualified

as the permanent and serving case Trustee.

        3.      Since the Petition Date, the Debtor has engaged in protracted attempts to relitigate

various matters in the state courts of New Jersey and New York.  In addition, he is taken the

opportunity in this Court to interfere with the bankruptcy process and the Trustee's administration of the estate.

4.       By way of example, the Debtor is involved with: (i) *AC I Toms River Mezz, LLC et al v JDWC, LLC as Assignee of RCG LV Debt IV Non-REIT Assets Holdings, LLC* in which the Debtor is a third party defendant, pending in the Superior Court of New Jersey, Chancery Division, Docket No. OCN-C-209-13; (ii) *Chana Ringel et al v. BR Lakewood, LLC et al,* Docket No. OCN-C-127-15, in which the Debtor is purportedly represented by Meister Seelig & Fein PLLC; (iii) *Chana Ringel, et al v. Benjamin Ringel, et al,* in which the Debtor is purportedly represented by Meister Seelig & Fein PLLC, Docket No. OCN-C-152-16; *RCG LV Debt IV Non-REIT Assets Holdings, LLC v. AC I Toms Rive, LLC, Benjamin Ringel and Unknown Tenants 1-10,* Docket No. F-22458-14.  These cases are not a full representation of the various litigations in which Ringel is or was involved as of the Petition Date.

5.       The Debtor comes to this Court having litigated for many years, many issues, including, but not limited to, long and contentious matters with his sister, Chana Ringel ("Chana"). Much of the litigation involved ownership of various limited liability companies which owned interests in numerous parcels of real property.  The Debtor was alleged to have attempted to shield his assets from various secured creditors by transferring the ownership in these various entities out of his name into an alleged trust created by the Debtor (the "Trust").  The Trust is alleged to have been created to benefit the Debtor's children.  The Trustee and the various creditors owed millions of dollars believe that the Trust was nothing more than a blatant attempt by the Debtor to secrete his assets to avoid his creditors.

6.       As this Court is aware, prior to the Petition Date, the Debtor was divested of his interest in BR Lakewood, LLC, which held ownership of real property located in Lakewood, New

Jersey, referred to as the Pinewood Property. Pursuant to an Order of the New Jersey State Court, the Pinewood Property was liquidated and the proceeds realized from the sale were held in escrow until the parties sought the entry of an Order in this Court finding that the proceeds were not property of the estate and therefore not subject to the automatic stay, or, in the alternative, that the stay be modified to allow for the distribution. This Court concluded that the stay was not at issue as the Debtor was divested of his interest pre-petition. The Order of this Court is a final, non-appealed, non-appealable Order. Despite that, the Debtor continues to argue before the New Jersey State Court that his interest was not a 100% interest but a lesser interest as he had transferred a substantial interest to the Trust. By continuing to argue this, the Debtor continues to attempt to interfere with the orderly administration of this bankruptcy estate. The Trustee notes that the Debtor's argument regarding his interest in BR Lakewood predates the Petition Date and by letter dated March 11, 2024, the Debtor's counsel, Meister Seelig & Fein PLLC, set forth to the New Jersey State Court, that it represented the Debtor, BR Lakewood LLC and BCR Lakewood LLC and alleged that the Debtor held only a twenty (20) percent interest. The Trustee understands that the proceeds realized from the sale of the Pinewood Property have been distributed pursuant to a final, non-appealed, non-appealable Order of the New Jersey State Court. That has not precluded the Debtor from continuing to attempt to relitigate this issue.

7.      Now the Debtor is attempting to interfere with the sale of certain real property located in Lakewood, New Jersey, and commonly known as: (i) the Gertners Property; and (ii) the Carey Property. These two properties are owned by the Debtor, through his sole membership in BR Lakewood, LLC. In turn, BR Lakewood, LLC, is the sole member of BCR Pinewood Realty, LLC. BR Lakewood holds 100% of the interests in BCR 12th Carey Realty, LLC and 100% of the

interests in BCR Gertners Realty, LLC.  The Carey Property is owned by BCR 12th Carey Realty, LLC and the Gertners Property is owned by BCR Gertners Realty, LLC.

8.      Pursuant to its secured creditor status, JDWC LLC, ("JDWC") sought and obtained an Order in the New Jersey State Court, allowing JDWC to install a management company to manage the two pieces of real property (Gertners and Carey) which are comprised of multiple apartments.  However, the Debtor took unilateral action, absent any order issued by any court, and created his own management company and installed that management company and directed that the tenants make rent payments to the newly created management company.  While the Debtor argued that the newly created management company was owned by the Debtor's children, a letter sent to the tenants directed them to contact the Debtor with any concerns they may have had.

9.      This issue was considered by the New Jersey State Court and the Debtor was admonished and warned that his actions were a violation of the prior orders of that court insofar as no relief from the New Jersey State Court's Order appointing a management company was sought.  Moreover, the Trustee made it clear to counsel representing the Debtor or the Debtor's children, that relief from the automatic stay before this Court was necessary since the property that the Debtor sought to "manage" constituted property of the estate.  To date, no application has been filed with this Court seeking such relief.  After the conclusion of the hearing before the New Jersey State Court, the Debtor once again sought to interfere with the administration of this bankruptcy estate.

10.     On October 11, 2024, the Debtor filed a letter with the New Jersey State Court, *after* the Honorable Francis R. Hodgson ruled that certain actions taken to interfere with the management of the Getners and Carey properties, allegedly taken by the Debtor's children, was an action taken in direct violation of the New Jersey State Court's prior Orders, the Debtor engaged

in his usual dilatory tactics to attack every prior order entered by any court of competent jurisdiction. It was clear that the actions taken by the Debtor's children were taken at the direction of the Debtor and were designed to interfere with the rights of creditors of this estate. The ownership of both the Gertners and Carey properties and the management of these multi-family units are issues central to this bankruptcy case. The Court has been asked to consider the Trustee's application pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving the compromise reached to allow for the sale of the two properties for a substantial benefit to the bankruptcy estate.

11.    Immediately after the New Jersey State Court issued its adverse ruling against the Debtor and his children, the Debtor yet again sought to relitigate issues that have previously been decided against him. In his October 11, 2024, letter, the Debtor sought to prosecute issues that had already been determine, on a final basis, in *Chana Ringel et al v. BR Lakewood LLC et al* and *Chana Ringel, et al v. Benjamin Ringel, et al,* pending in the New Jersey State Court. The Debtor stated in his letter to the court that he had filed an Order to Show Cause on March 9, 2022, in which he sought to argue that the plaintiff, *Chana Ringel*, had breached the settlement agreements that the parties entered into. In other words, he seeks to relitigate these issues yet again. Assuming *arguendo* that Chana Ringel engaged in some unspecified nefarious act, any cause of action that continues to exist would belong to the Trustee and only the Trustee. Yet, the Debtor acts as if the instant bankruptcy is nothing but a mere inconvenience.

12. While the Debtor's actions in other bankruptcy matters in which he was involved,[1] may not be a reason to punish the Debtor in this chapter 7 case, the Court may take judicial notice of

---

[1] Among the actions in which Ringel was involved, the Court is directed to *In re AC NW Retail Investment LLC and Armstrong New West Retail, LLC,* Case No. 16-23085-shl, in which Judge Lane imposed monetary sanctions against Ringel after he shamelessly admitted to the Court that he had misappropriated $50,000 from the debtors' bank account

how he conducted himself in various other bankruptcy cases as well as the various orders of contempt issued against him in cases in New York and New Jersey. In short, Ringel is no stranger to ignoring obligations. Despite the fact that that the Debtor has been warned of the consequences that may await Ringel should he ignore his obligations as a chapter 7 debtor, Ringel acts with disregard to the consequences as evidenced by his willingness to interfere with the administration of this case. The Debtor has adopted a path to attempt to avoid the Trustee and shield his assets from his creditors. The record is replete with the Debtor's efforts to frustrate the rights of his creditors for years. This Court warned and admonished the Debtor at a prior hearing that he must not interfere with the administration of this estate. Clearly, that warning was insufficient as the Trustee is forced, once again, to cause the estate to incur significant expense to protect both the estate and its creditors from the actions of the Debtor.

**BASIS FOR RELIEF**

13. Is axiomatic that upon the filing of a petition in bankruptcy an estate is created. Pursuant to section 541(a)(1) of the Bankruptcy Code, property is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." *11 U.S.C. § 541(a)(1); City of Chicago v. Fulton,* 141 S. Ct. 585, 589 (2021). The scope of section 541(a) is expansive. However, the estate's rights to which the Trustee succeeds can be no greater than those held by the Debtor on the Petition Date. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n.8 (1983). The phrase "as of the commencement of the case" in section 541(a)(1) operates as a temporal cutoff, "meaning that property interests that exist and belong to a debtor when the petition is filed are included within the bankruptcy estate, whereas property interests that a debtor acquires after the

---

and used the money to pay for personal expenses. Judge Lane imposed a $10,000 sanction against Ringel to punish him for his actions.

bankruptcy filing are not party of the estate, subject to certain exceptions stated in section 541." *In re Brown,* 601 B.R. 514, 517 (Bankr. C.D. Ill. 2019) (citation omitted).

14.     Under section 542(a), "an entity…in possession, custody, or control, during the case, of property that the Trustee may use…under section 363 of this title…shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential benefit to the estate."  Here, there can be no dispute that the Debtor's interest in the personal property of his late mother, and the interest in the Surfside Condo and the Florida Action, must be considered property of the estate.  The Debtor has not moved to compel the abandonment of these assets.

15.     The Court may consider whether the Debtor's actions would be considered violations of the automatic stay pursuant to section 362(a)(3) of the Bankruptcy Code and whether the Court may award sanctions under sections 362(k) of the Bankruptcy Code and 105(a).  This Court may look to *McCord v. Sofer (In re Sofer),* 507 B.R. 444, 449 (Bankr. E.D.N.Y. 2014) for support that the Debtor may be punished for a violation of the automatic stay.  Section 362(a) of the Bankruptcy Code provides that the filing of the bankruptcy petition "operates as a stay, applicable to all entities of…any act to…obtain possession or exercise control over property of the estate.").  In *McCord v. Sofer*, former Chief Judge Craig reasoned that "[D]ebtor can count himself among those so stayed."  *Sofer,* 507 B.R. at 450.

16.     It is instructive to review the dual purposes of the automatic stay.  While the stay protects the debtor from pre-petition creditors by stopping, "all collection efforts, all harassment, and all foreclosure actions," it also protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payments of claims.  *See, H.R. Rep. No. 595 95th Cong., 1st Sess. 340 (1978),* reprinted in 1978

U.S.C.C.A.N. 5787, 5963, 6296-97.  Former Chief Judge Craig relied on this in her decision in *Sofer,* 507 B.R. at 449.

17.    Here, the Trustee is seeking to preserve the assets of the estate for the benefit of the creditors of the estate.  The Trustee is duty bound, as a fiduciary to the estate, to do just that.  He should not have to continue to remind the Debtor of his obligations under the Bankruptcy Code and the estate certainly should not be burdened by the costs associated with the prosecution of this application.  Under the circumstances, the Court has ample authority to impose monetary sanctions under the Bankruptcy Code.  The Court further has the authority to enforce its own Orders and the entry of the Order for relief obligates the Debtor to comply with his duties under the Bankruptcy Code.

18.    While the Trustee recognizes that an award of sanctions is an extraordinary remedy, where misconduct continues even after the Debtor was warned, sanctions are appropriate.  The Second Circuit stated in *Oliveri v. Thompson,* 803 F.2d 1265, 1271 (2d Cir. 1986), "[E]ven though the subject to sanctions is a distasteful one to any court, increasing tensions in and occasional abuses of the judicial system have prompted both judges and legislators to turn toward sanctions as a means of improving the litigation process.  [T]he sources of judges' sanctioning power are diverse, and the standards invoked have not always been either clear or consistently applied."

19.    The Second Circuit identified several 'primary sources' of the power to impose sanctions, including the court's inherent power under 42 U.S.C. § 1988. 28 U.S.C. § 1927 and Rule 9011 of the Federal Rules of Bankruptcy Procedure.  Here, the Debtor is action *pro se* and thus holding him accountable as this Court would hold any lawyer accountable, is appropriate.  Rule 9001 imposes a duty on attorneys *and* unrepresented parties to certify by their signature that any "petition, pleading, written motion or other paper" filed with the court is not being presented

8

for any "improper purpose," and is supported by existing law or a nonfrivolous argument for a change in the law.

20.     This Court may also look to section 105 of the Bankruptcy Code to impose monetary sanctions.  The purposes of section 105 include assuring that the administrative process established by the Bankruptcy Code are able to provide for the prompt and fair administration of bankruptcy cases.   The efficient operation of the Bankruptcy Code is important in every bankruptcy case, but it may well have special significance and consequences in the individual chapter 7 case with few potential assets, where the trustee must promptly investigate, collect and distribute property of the estate.  *See, In re Ambotiene,*316 B.R. 25 (Bankr. E.D.N.Y. 2004).

21.     The Trustee has acted in good faith and with all due diligence to administer assets in this estate only to have to fight with the Debtor's continued interference with the Trustee's discharge of his fiduciary duties.  The Trustee has been forced to appear in the New Jersey State Court to explain the Debtor's interference.   For these reasons alone, this Court should impose significant monetary sanctions to make certain that this Debtor understands his obligations and to make certain that he stops his continued interference with the orderly administration of this estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order (i) directing that the Debtor immediately refrain from attempting to interfere with the Trustee's orderly administration of this estate and its property; (ii) immediately cease from contacting any party in connection with property of the estate, including but not limited to, the management of the Gertners Property and/or the Carey Property (iii) impose a monetary sanction for the Debtor's actions; (iv) together with such other and further relief this Honorable Court determines is just and proper under the facts and circumstances herein.

Dated: Smithtown, New York
          November 1, 2024

The Kantrow Law Group, PLLC
Attorneys for Allan B. Mendelsohn, Trustee

BY:    S/Fred S. Kantrow
       Fred S. Kantrow
       732 Smithtown Bypass, Suite 101
       Smithtown, New York 11787
       516 703 3672
       fkantrow@thekantrowlawgroup.com