Donald F. Campbell, Jr., Esq. (*Admitted Pro Hac Vice*)
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road
Red Bank, New Jersey 07701
Tel: (732) 741 3900
Fax: (732) 224 6599
dcampbell@ghclaw.com
*Attorneys for JDWC, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

       BENJAMIN O. RINGEL,

                      Debtor.
----------------------------------------------------------x

Case No.: 24-71468(LAS)
Chapter 7

## MOTION FOR ENTRY OF AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY OR (II) MODIFYING THE AUTOMATIC STAY

TO:   HON. LOUIS A. SCARCELLA
        UNITED STATES BANKRUPTCY JUDGE

JDWC, LLC ("*JDWC*"), by and through its undersigned counsel, Giordano, Halleran & Ciesla, P.C., respectfully submits this motion (the "*Motion*") seeking the entry of an Order (i) pursuant to 11 U.S.C. §§ 105(a) and 362 confirming that the automatic stay does not apply, and or (ii) modifying the automatic stay as necessary and pursuant to 11 U.S.C. § 362(d)(1) to proceed with the Ringel Children's Trust ("*Trust*") motion for reconsideration filed by Elliot D. Ostrove, Esq. of Epstein Ostrove, LLC, and is pending before the New Jersey Superior Court ("*NJ Court*") titled <u>Chana Ringel, et. al. v. BR Lakewood, LLC, et. al.</u>, under Docket No. OCN-C-127-15 and <u>Chana Ringel, et. al. v. Benjamin Ringel, et. al.</u>, under Docket No. OCN-C-152-16. The Trust's motion seeks reconsideration of a July 19, 2024 order entered by the NJ Court. The Chapter 7 Trustee, Allan B. Mendelsohn (the "*Trustee*"), represented by The Kantrow Law Group, PLLC, hereby supports the Motion set forth by JDWC. In further support of the Motion, JDWC respectfully states as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The statutory predicates for the relief sought herein are §§ 105 and 362 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1 of the Bankruptcy Local Rules for the Eastern District of New York. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

By this Motion, JDWC seeks entry of an order, substantially in the form submitted herewith, (i) confirming pursuant to 11 U.S.C. §§ 105(a) and 362 that the automatic stay does not apply, or (ii) lifting the automatic stay as necessary and pursuant to 11 U.S.C. § 362(d)(1) to allow the Trust's motion to proceed before the NJ Court, which motion is seeking reconsideration of a July 19, 2024 order issued by the NJ Court, in the event that this Court finds that the automatic stay applies. The Trust's motion has been pending since August 7, 2024, but has been adjourned by the NJ Court as relief from the stay was not requested by the Trust. To date, the Trust has not filed a motion with this court to lift the stay. As such, JDWC moves before this court to confirm the absence of stay or lift the automatic stay as it relates to the Trust's motion pending before the NJ Court.  Resolution of the Trust's motion is in the best interest of the estate because the motion for reconsideration is related to the motion for distribution which the bankruptcy authorized to proceed before the state court.  Furthermore, the motion will assist in addressing one of the fundamental portions of the October 23, 2024 stipulation (the "*Stipulation*") [Docket No. 106, 107] between the creditors and the Chapter 7 Trustee.

## BACKGROUND

**JDWC's Judgment and Other Creditors.**

On January 8, 2016, RCG LV Debt IV Non-Reit Assets Holdings, LLC ("*RCG*") obtained a judgment against Benjamin Ringel ("*Debtor*" or "*Ringel*") in a matter before the Superior Court of New Jersey, Chancery Division, Ocean County titled <u>AC I Toms River Mezz, LLC, et al. v. RCG LC Debt IV Non-Reit Asset Holdings, LLC v. Benjamin Ringel et al.</u>, under Docket No. OCN-C-209-13[1] ("*Judgment*"), which was docketed on May 5, 2016 in the State of New Jersey as Judgment No. J-75989-16. *See* Campbell Aff.,[2] at Exhibit A.  RCG assigned its interest in the Judgment to JDWC, which assignment of judgment was filed with the New Jersey Superior Court Clerk's Office on February 11, 2019. *Id.* at Exhibit B.  On October 25, 2019, the Court granted JDWC a charging order against Ringel's interests in certain limited liability companies ("*Charging Order*"), including BR Lakewood, LLC ("*BR Lakewood*"), BCR Pinewood Realty, LLC ("*BCR Pinewood*"), BCR Gertners Realty LLC ("*BCR Gertners*"), and BCR 12th Carey Realty, LLC ("*BCR Carey*"). *Id.* at Exhibit C.

Ringel appealed the Judgment, however, and on August 30, 2023, the Superior Court Appellate Division issued a written decision affirming the Judgment and remanded the matter back to the trial court for determination of the total amount due to JDWC. *Id.* at Exhibit D. On January 25, 2024, the NJ Court issued an order updating the judgment calculations, awarding JDWC $9,484,241.02 through December 15, 2023 plus interest and counsel fees. *Id.* at Exhibit E. On December 6, 2024, the NJ Court awarded JDWC counsel fees and costs in the amount of $883,402.93. *Id.* at Exhibit F.

---

[1] The "OCN" prefix denotes the venue of Ocean County, and the "C" denotes the docket for the Chancery Division, a part of the Superior Court of New Jersey's trial level court.
[2] "Campbell Aff." shall refer to the Affidavit of Donald F. Campbell, Jr., Esq., dated January 31, 2025 and submitted herewith.

Debtor has additional creditors, including Atalaya Asset Income Fund II LP ("*Atalaya*"), which is the holder of a judgment against Debtor entered in the Supreme Court of New York ("*NY Court*"). *Id.* at ¶ 8. On March 8, 2023, Atalaya obtained a charging order from the NY Court against Debtor's interests in certain limited liability companies, including BR Lakewood, BCR Pinewood, BCR Gertners, and BCR Carey, which charging order has since been recognized by the NJ Court. Ibid.

Another creditor of Debtor's is LMezz 250 W90, LLC ("*LMezz*"), who is the holder of a judgment against Debtor entered in the NY Court. Ibid. LMezz also obtained a charging order from the NJ Court against Debtor's interests in certain limited liability companies, including BR Lakewood, BCR Pinewood, BCR Gertners, and BCR Carey. *Id.*

**Membership Disputes and Fiscal Agent.**

Aside from JDWC and his other creditors, Debtor was litigating against his sister, Chana Ringel ("*Chana*") in two matters in NJ Court under dockets OCN-C-127-15 and OCN-C-152-16. As a consequence of the order to show cause filed in OCN-C-127-15, on November 6, 2015, the NJ Court removed Debtor as manager and appointed Affiliated Management, Inc., as special fiscal agent (the "*Fiscal Agent*") over the operations of BCR Lakewood Holdings, LLC, which is the sole member of five entities, each owning an investment property, which include: (i) BCR Pinewood, (ii) BCR Gertners, (iii) BCR Carey, (iv) BCR Clifton Center Realty, LLC ("*BCR Clifton Center*"), and (v) BCR Clifton Avenue Realty, LLC ("*BCR Clifton Ave.*") (collectively the five entities are the "*BCR Entities*"). *See* Campbell Aff. at Exhibit G.  At the core of the dispute was the operation of the BCR Entities, as the two members of BCR Lakewood Holdings, LLC are BR Lakewood (owned solely by Ringel) and CR Lakewood, LLC (owned solely by Chana).

In January of 2020, JDWC served the Charging Order on the Fiscal Agent and requested that it turn over all distributions due to Ringel or his affiliates to JDWC. *Id.* at ¶ 10. Starting in February of 2020, the Fiscal Agent started making distributions to JDWC by sending the payments to counsel for JDWC. *Id.*

**JDWC's Fraudulent Transfer Action.**

On April 1, 2020, in an attempt to avoid JDWC's Charging Order, Ringel filed a motion to modify the Charging Order, claiming he had previously transferred 80% of his ownership in BR Lakewood to the Trust in alleged transfers that occurred in 2012 and 2015 for no consideration. *Id.* at Exhibit H. Ringel's motion was denied by the court in an order dated June 1, 2020, where the court also allowed JDWC to file a verified complaint to void the fraudulent transfers and seek injunctive relief. *See* Campbell Aff. at Exhibit I. Also, the June 1, 2020 Order required all distributions from BR Lakewood received from the court-appointed Fiscal Agent to be held in escrow by Giordano, Halleran & Ciesla, P.C. ("*GH&C*"). *Id.*

On July 10, 2023, JDWC filed a new action in the NJ Court under Docket No. OCN-C-101-20. In connection therewith, JDWC sought, and the court entered, an order to show cause with temporary restraints on August 6, 2020. *See* Campbell Aff. at Exhibit J. The order to show cause restrained and enjoined Debtor, Yael Ringel, BR Lakewood, the Trust, and the Estate of Klara Ringel from "conveying, transferring, disbursing, hypothecating, destroying, discarding, encumbering, mortgaging, borrowing against, indebting or drawing upon any of their assets…" Ibid. Thereafter, on September 18, 2020, the court entered another order stating that "[t]he restraints entered on August 6, 2020 will continue until further order of the Court…" *Id.* at Exhibit K (collectively the August 6, 2020 order and September 18, 2020 order in OCN-C-101-20 are called the "*Preliminary Restraints*").

**Settlement of Membership Dispute.**

On December 23, 2020, Ringel filed another motion to modify the Charging Order. *Id.* at ¶ 17.  Also during this time, Ringel sought to settle the Ringel v. Ringel matters (referenced above under dockets OCN-127-15 and OCN-C-152-16), which settlement and corresponding transfer of properties and assets would violate the Preliminary Restraints and the Charging Order. *Id.*  Thus, on January 5, 2021, JDWC filed a motion to enforce litigants rights in OCN-C-209-13 and OCN-C-101-20. *Id.*  On January 28, 2021, Ringel filed a cross-motion to stay the OCN-C-101-20 action. Ibid.  JDWC and Ringel were negotiating a consent order to resolve the motions, but the parties did not come to a final agreement. Ibid. Notably, the Trust was not part of these discussions even though the order and relief, which involved distributions and usage of BR Lakewood's assets as collateral, would have significantly impacted the Trust (because the Trust is a farce). *Id.* In response to the motions in OCN-C-209-13 and OCN-C-101-20, the NJ Court entered an order on March 10, 2021, allowing for the transfer of certain assets so that the Ringel v. Ringel membership dispute could be settled ("*March 10, 2021 Order*"). *Id.* at Exhibit L.  The March 10, 2021 Order modified the restraints provided in the Charging Order from OCN-C-209-13 and the Preliminary Restraints from OCN-C-101-20. *Id.*

Key to the settlement in the Ringel v. Ringel matters, the March 10, 2021 Order allowed for a property swap, such that Ringel would receive Chana's ownership in BCR Gertners, and BCR Carey, and in turn, Ringel would convey his ownership in BCR Clifton Center and BCR Clifton Ave. to Chana. *Id.*  Thus, Ringel, through BR Lakewood, would own the entirety of the BCR Gertners and BCR Carey entities. *Id.*  The settlement was effectuated, and BR Lakewood became the sole owner of BCR Gertners and BCR Carey.  *Id.* at Exhibit M. The settlement also

provided for the sale of a fifth property ("*Pinewood Property*"), owned by BCR Pinewood, with the net proceeds to be split between Debtor and Chana.

**Atalaya's Motion for Turnover and Receivership.**

As Ringel was taking actions to thwart the sale of BR Lakewood's assets (including the Pinewood Property) and prevent collection of his debts, on October 20, 2023, Atalaya filed a motion with the NY Court for turnover of the interests in BR Lakewood to Atalaya as Receiver. By order dated December 11, 2023, the court granted the motion ("*Turnover Order*"). *Id.* at Exhibit N. That decision turned over 100% of the BR Lakewood membership interests to Atalaya as receiver, to help facilitate the sale of BR Lakewood's assets so that the creditors with charging liens may recover from such proceeds of sale. *Id.* Specifically the Turnover Order provides that:

> ORDERED that pursuant to CPLR 5225(a), one hundred percent (100%) of the membership interests in BR Lakewood, including without limitation the interests allegedly held by the Ringel Children's Trust a/k/a Ringel Children's Trusts (the "BR Lakewood Membership Interests"), are hereby directed to be turned over to a receiver.
>
> ORDERED that pursuant to CPLR 5228, Atalaya is hereby appointed as receiver of BR Lakewood and is vested with all of the rights and powers provided in that section to satisfy the judgment in this action subject to the provisions of this order set forth below…
> [*Id.*]

On January 9, 2024, Ringel and his co-defendants filed a notice of appeal of the Turnover Order. *Id.* at ¶ 21.

**Sale of Pinewood, Distribution of Proceeds, and Deficiency.**

On November 16, 2023, the NJ Court ordered the closing on the Pinewood Property to occur within 90 days of that order becoming final and non-appealable. *Id.* at Exhibit O. Further, the November 16, 2023 order provided that BR Lakewood's share of the net proceeds shall be deposited in the trust account of GH&C. *Id.* The order was not appealed. *Id.* at ¶ 23. The closing

occurred on March 28, 2024, and $19.4 million, BR Lakewood's share of the net proceeds, was deposited with GH&C. *Id.*

After the Pinewood Property sale closed, on May 8, 2024, Atalaya as Receiver for BR Lakewood, filed a motion in the NJ Court under docket OCN-C-127-15 and OCN-C-152-16 for distribution of the proceeds from the sale of the Pinewood Property. *Id.* at ¶ 24. As part of that motion, Atalaya proposed a distribution schedule for the distribution of the proceeds. *Id.* All creditors agreed to the distribution schedule. Notably, the proposed distribution of the $19.4 million, still left a deficiency for creditors JDWC, Atalaya and LMezz. *Id.*

On April 15, 2024, Ringel personally filed a bankruptcy petition before this court under Chapter 7 of the Bankruptcy Code, Case No. 24-71468(LAS). *Id.* at ¶ 25. On May 22, 2024, Ringel's bankruptcy counsel sent a letter to the chambers of the Hon. Francis R. Hodgson, Jr., A.J.S.C. in the NJ Court, taking the position that the automatic stay of Ringel's Bankruptcy prevented the distribution of the proceeds from the Pinewood Property sale. *Id.* at ¶ 36. In response, Atalaya filed a motion with this Bankruptcy Court to confirm the absence of the automatic stay, or in the alternative, to lift the automatic stay, to allow the distributions from the Pinewood Property sale to be made. *Id.* This bankruptcy court granted Atalaya's motion by order issued on July 16, 2024. *Id.* [Docket No. 62]

The motion for distribution of the proceeds from the Pinewood Property sale was made returnable for July 19, 2024. *Id.* at ¶ 28. On July 11, 2024, JDWC submitted a certification with a revised exhibit for the distributions, which was updated, primarily to account for interest that had accrued since the time Atalaya filed its motion. *Id.* at Exhibit P. As set forth in this exhibit, and as of July 19, 2024, the deficiency due to Atalaya was $296,741 plus attorneys' fees of at least $543,000, the deficiency due to JDWC was $818,856 plus attorneys' fees of more than $680,000,

and the deficiency due to LMezz was $14,899,878. *Id.* On July 19, 2024, the Trust filed a letter requesting an adjournment of the motion for distribution, but that request was denied by the NJ Court. Id. at ¶ 30. On July 19, 2024, the NJ Court granted the motion and entered the order for distribution. *Id.* at Exhibit Q. The funds that were being held by GH&C were distributed pursuant to the order. Id. at ¶ 32.

On August 7, 2024, in the NJ Court and without lifting the automatic stay, the Trust filed a motion to intervene in OCN-C-152-16 and for reconsideration of the July 19, 2024 order. *Id.* at ¶ 33. On September 5, 2024, the Trust later filed an identical motion in OCN-C-127-15. *Id.* In short, the Trust has taken the position that it still owns 80% of BR Lakewood, while Debtor owns 20% of BR Lakewood, and therefore, only 20% of the proceeds due to BR Lakewood from the sale of Pinewood Property should have been distributed to Debtor's creditors. *Id.* JDWC and the other creditors have vigorously disputed the Trust's position. *Id.* at Exhibit R. The Trust's motion was made returnable several times in the fall and early winter of 2024, but each time it has been adjourned because the Trust has not obtained relief from the automatic stay to proceed with its motion. *Id.* at ¶ 35. Indeed, to date, the Trust has not moved before this court to lift or modify the automatic stay. *Id.*

## THE DEBTOR'S BANKRUPTCY PROCEEDING

As stated above, on April 15, 2024, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code (the "*Bankruptcy Code*") [Docket No. 1]. Allan B. Mendelsohn was appointed the Chapter 7 Trustee (the "*Trustee*") [Docket No. 2]. On May 24, 2024, the Trustee filed a notice of discovery of assets, asserting proof of claims due on August 22, 2024 [Docket No. 18].

On June 4, 2024, Atalaya filed a motion for relief from stay, or in the alternative to confirm the absence of the automatic stay, in relation to its motion for distribution of BR Lakewood's proceeds from the sale of the Pinewood Property [Docket No. 24]. On July 2, 2024, Atalaya, LMezz, and JDWC all filed supplemental briefs in further support of Atalaya's motion to confirm the absence of the automatic stay [Docket No. 41-43]. On July 3, 2024, the Debtor filed opposition [Docket No. 44]. On July 9, 2024, the Court grant Atalaya's motion and on July 16, 2024, the form of order was submitted, granting Atalaya's motion for relief from the automatic stay [Docket No. 62]. Pursuant to this Court's ruling, the automatic stay imposed under §362(a) was vacated pursuant to §362(d)(1) and (2) to permit Atalaya to proceed with its motion before the NJ Court to distribute the funds of BR Lakewood held from the Pinewood Property sale. The Trust's Motion is substantially related to the Atalaya motion and July 16, 2024 order because The Trust's motion seeks reconsideration of the Atalaya motion which was authorized to proceed before the NJ Court.

On October 23, 2024, the Trustee filed a motion to compromise controversy with JDWC, Atalaya and LMezz, whereby the Trustee sought approval of a "Stipulation and Order Granting Limited Relief from the Automatic Stay as to Sale of Property owned by BCR Gertners Realty, LLC and BCR 12th Carey Realty, LLC and Other Related Relief." ("*Stipulation*"). [Docket No. 106, 107]. Pertinent here, the Stipulation was entered under the premise that Ringel was the sole owner of BR Lakewood such that all of the proceeds from the sale of BR Lakewood's assets would be available to JDWC and the other Ringel creditors. The Stipulation provides for the dismissal of the appeal of the Turnover Order and provides an avenue for the receiver of BR Lakewood to sell Carey and Gertners for the benefit of Debtor's creditors and the Debtor's bankruptcy estate.

On November 22, 2024, the Court entered an order approving the Stipulation to allow the Trustee, JDWC, Atalaya, and LMezz to effectuate all provisions set forth in the Stipulation [Docket No. 127].

## BASIS FOR RELIEF

Here, cause exists to allow the Trust's motion for reconsideration to be heard because the Court has previously granted Atalaya's motion to lift the automatic stay to allow the distribution motion to proceed in state court and the Motion for Reconsideration will address a lingering dispute related to the NJ Court's authorization to distribute the BR Lakewood funds to Ringel's various creditors which is an issue closely related to the Chapter 7 Trustee's Stipulation with said creditors.

### I. The Automatic Stay Does Not Apply to the Trust's State Court Motion for Reconsideration

The Trust's Motion for Reconsideration should not be subject to the automatic stay because the motion is related to a previous order of this Court lifting the automatic stay to allow Atalaya to file a motion to authorize the distribution of the Pinewood proceeds.

It is respectfully submitted that the Court should enter an order confirming that the automatic stay does not prohibit the Trust, and the interested parties, from proceeding with the Motion for Reconsideration as well as any subsequent appeal for same because it is merely an extension of the Court's July 16, 2024 Order lifting the stay to proceed with distribution.

### II. Alternatively the Court Should Lift the Automatic Stay Because Cause Exists to Grant Stay Relief Pursuant to 11 U.S.C. § 362(d)(1).

The Bankruptcy Code provides that a bankruptcy petition operates as a stay of the commencement or the continuation of a proceeding against a debtor. 11 U.S.C. § 362(a). The Court

may grant a party relief from the automatic stay under § 362(d) of the Bankruptcy Code, which, in pertinent part, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if-
>
> > (A) the debtor does not have an equity in such property; and
> > (B) such property is not necessary to an effective reorganization

11 U.S.C. § 362(d).

"[T]he term 'for cause' [is] 'a broad and flexible concept that must be determined on a case-by-case basis.'" *Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 508 (E.D.N.Y. 2018) (quoting *U.S. Bank Tr. Nat'l Assoc. v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013)). Moreover, the Second Circuit considers twelve factors in determining whether cause exists to lift the stay, including:

1. Whether relief would result in a partial or complete resolution of the issues;

2. Lack of any connection with or interference with the bankruptcy case;

3. Whether the other proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5. Whether the debtor's insurer has assumed full responsibility for defending it;

6. Whether the action primarily involves third parties;

7. Whether litigation in another forum would prejudice the interests of other creditors;

8. Whether the judgment claim arising from the other action is subject to equitable subordination;

9. Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

    10. The interests of judicial economy and the expeditious and economical resolution of litigation;

    11. Whether the parties are ready for trial in the other proceeding; and

    12. Impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citation omitted).

"[T]he Court need only consider the relevant factors in making its determination." *In re Containership Co. (TCC) A/S*, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012); *see also In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (utilizing only four of the factors). "Further, the Court may apportion weight among the factors as it sees fit." *Matter of Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3361053, at *4 (Bankr. S.D.N.Y. May 10, 2023). Courts have found cause to lift the stay based on one factor alone. *See, e.g., In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) ("The factor of judicial economy may be considered in deciding whether to lift the automatic stay; in fact, a decision to lift the stay may be upheld on this ground alone.") (Citation omitted); *cf. In re Sonnax Indus.*, 907 F.2d at 1286 (stating that the decision of whether to lift the stay is committed to the discretion of the bankruptcy judge) (internal citation omitted).

The *Sonnax* factors that are implicated here all weigh in favor of granting stay relief as follows:

1. The requested relief would result in substantial resolution of an issue between two non-debtor parties. JDWC has essentially resolved all issues between itself and the estate. The requested relief is merely an attempt to consummate the terms of the agreement entered into between the Trustee and the creditors. Furthermore, lifting the stay would allow the parties to resolve the Motion for Reconsideration as well as any subsequent appeal that may be filed by either party.

2. The requested relief has no connection with and will not interfere with the estate. The requested relief should only further advance the terms of the Stipulation amongst the creditors.

3. The NJ Court matters do not involve the Debtor as a fiduciary.

4. The NJ Court is not a specialized court, but NJ Court Judge Hodgson, has presided over this case for almost ten (10) years and is fully familiar with all other parties and facts of the case.

5. Factor #5 is not applicable in this situation.

6. The NJ Court matters involve primarily third-party non-debtor entities, and the motion was filed by the Trust, which is not a creditor nor party to the bankruptcy case, as the Trust has not filed a proof of claim or entered an appearance in this case.

7. Allowing the motion to proceed in the NJ Court would not prejudice the interests of other creditors.

8. Factor #8 is not applicable to the instant motion.

9. Factor #9 is not applicable to the instant motion.

10. The interest of judicial economy and the expeditious resolution of the NJ Court matters are best served by allowing the motion to proceed as the motion will resolve a particular objection which is material to the terms of the Stipulation entered into between the creditors and the estate. Any furtherance of delay of the instant motion would only interfere in completion of the resolution between parties.

11. Factor #11 is not applicable as the motion was filed as a post judgment proceeding. This matter has been previously resolved. Notably, there is a possibility that the Trust, upon the determination by the NJ Court, may attempt to appeal the court's decision. However, any appeal right should not have any impact on the estate, and any further delay in determining the outcome

of the instant motion would only delay any appeal right, and ultimately, further delay administration of the estate.

12. The stay is currently preventing the motion from being determined and as such, the stay is detrimental to all parties involved. The Trust sought the requested relief set forth in the motion therefore, lifting the automatic stay would not be detrimental to the Trust. Moreover, other interested parties are only harmed by further delay halting resolution of the motion.

It is respectfully submitted that ample cause exists to provide relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

Notably, the Chapter 7 Trustee supports this motion.

## NOTICE

Notice of this Motion will be given to: (i) the Debtor and its counsel; (ii) the Chapter 7 Trustee; and (iii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 4001(a)(1) and 9013. In light of the nature of the relied requested, JDWC submits that no other or further notice is required or needed under the circumstances.

## CONCLUSION

**WHEREFORE**, JDWC, LLC respectfully requests that this Court enter an order substantially in the form submitted herewith, (i) declaring that the automatic stay is not applicable, or in the alternative (ii) granting JDWC relief from the automatic stay as requested herein.

Dated: February 11, 2025

        Giordano, Halleran & Ciesla, P.C.
        Attorneys for JDWC, LLC

BY:   /s/ *Donald F. Campbell, Jr.*
       Donald F. Campbell, Jr.
       125 Half Mile Road, Suite 300
       Red Bank, New Jersey 07701
       Telephone:
       Email: dcampbell@ghclaw.com